**IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF KING – KENT DIVISION**

| | |
|---|---|
| **JESSICA KILMAN, individually and on behalf of all similarly situated;** | Case No.: 20-2-17692-3 KNT |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | |
| **CITY OF AUBURN,** a Washington municipal corporation; and **AUBURN VALLEY HUMANE SOCIETY,** a Washington nonprofit corporation, | |
| Defendants. | |

Plaintiff **JESSICA KILMAN,** through attorney of record **ADAM P. KARP** of **ANIMAL LAW OFFICES,** alleges:

## I. JURISDICTION AND VENUE

1.      Plaintiff **JESSICA KILMAN** ("Kilman") resides in the City of Auburn. She brings this Class Action pursuant to CR 23 on behalf of all similarly situated persons.

2.      Defendant **CITY OF AUBURN** ("City") is a municipal corporation, organized under the laws of the State of Washington, including for purposes of liability under 42 U.S.C. § 1983.

CLASS ACTION COMPLAINT - 1

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (833) 878-6835
adam@animal-lawyer.com

3.         Defendant **AUBURN VALLEY HUMANE SOCIETY** ("AVHS") is a nonprofit corporation with UBI 603-094-796 acting under color of state law for purposes of liability under 42 U.S.C. § 1983, with its principal place of business at 4910 A St. SE, Auburn, Wash.

4.         As a result of Defendant's actions, Kilman and other Class members have suffered or will suffer irreparable economic and noneconomic damage, irreversible and adverse declarative and injunctive harm, including violation of their constitutional rights.

5.         Plaintiffs' claims for attorney's fees and costs is authorized by, *inter alia*, 42 U.S.C. § 1988.

6.         On or about 9.23.20, City was duly served with a tort claim on behalf of Kilman in full compliance with state and county claim-notice laws. More than sixty days have elapsed since Kilman filed the claim with the City.

7.         This court has subject matter jurisdiction.

8.         This court has personal jurisdiction over the Defendants.

9.         Venue is proper.

## II. KILMAN ALLEGATIONS

10.         In or about 2011, per Resolution 4747 of 9.19.11, the City "enter[ed] into an agreement with AVHS for animal sheltering services" and executed a Professional Services Agreement with AVHS to provide sheltering, licensing, surrender, and adoption services only, not enforcement services in the form of field impoundment, civil infraction issuance, criminal citation issuance, or seizures. On information and belief, no employee of AVHS was given a law enforcement commission by the City, nor was any employee appointed by AVHS to enforce Ch. 16.52 RCW or Ch. 9.08 RCW, nor was any employee judicially authorized to do so per RCW 16.52.025.

**CLASS ACTION COMPLAINT** - 2

ANIMAL LAW OFFICES OF
**ADAM P. KARP, ESQ.**
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (833) 878-6835
adam@animal-lawyer.com

11.      Rather, per Section IV(A)(1), "stray, impounded, and unwanted companion animals [are] turned over to the AVHS by the City or its residents[.]"  Section IV(B) provides, "The AVHS shall establish all prices for services provided by AVHS in the Shelter, subject to the right of the City to periodically review the price schedules for all operations to ensure competitive pricing with other animal shelters."

12.      Since 2013, if not earlier, the City, through its designee AVHS, has charged citizens escalating impound fees drastically out of proportion with reasonable, comparable rates throughout the region and, in any event, without lawful authority, per the attached *AVHS Service Fee Chart* (**KILMAN 1).**

13.      AVHS also utilizes an *AVHS Return to Owner/Claim Form,* in the attached form (**KILMAN 2**). It refuses to release an impounded animal unless the owner agrees to pay AVHS "$500.00 as liquidated damages in the event that the terms of this agreement are breached," and which nonetheless "does not bar Auburn Valley Humane Society from seeking return of the animal by a judicial process or other legal means." The form also compels the owner to "agree to pay reasonable attorney fees and costs in the event this matter is forwarded to an attorney for enforcement."

14.      No municipal code provision or ordinance ever permitted the City or AVHS to charge such sums as reflected for repeat impounds, rendering same *ultra vires.*

15.      It is unknown if the City in fact ever reviewed the *AVHS Service Fee Chart* but, if it did, it condoned such unlawful rates and, if it did not, it shirked its duty to the citizens of Auburn and, in any event, improperly delegated legislative authority to a private nonprofit corporation whose decisionmakers are not elected by the public.

16.      Kilman has resided in the City for years and owned and presently owns Max, a now

**CLASS ACTION COMPLAINT** - 3

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 ● Bellingham, WA 98225
(888) 430-0001 ● Facsimile: (833) 878-6835
adam@animal-lawyer.com

eight-year-old, neutered male, Shih-Tzu. Her emotional support animal, Max also provided love and support to Kilman's minor children, with whom she resided and resides.

17.     On 6.25.17, Max was impounded the first time and returned to Kilman the same day. Though the amount claimed due by AVHS was $51, this fee was voided.

18.     On 3.3.19, nearly two years later, Max was impounded a second time and returned to Kilman the next day, 3.4.19. She was charged $77 by AVHS to obtain his release (representing board ($16), impound ($35), flea treatment ($10), and vaccine/deworm ($16) charges). Kilman paid the $77 and also caused to be paid $30 for a pet license. As a condition of release, she was forced to execute the foregoing *AVHS Return to Owner/Claim Form,* a true copy of which is attached as **KILMAN 4-5.**

19.     On 5.2.19, Max was impounded a third time and returned to Kilman the next day, 5.3.19. She was charged by AVHS $140 to obtain his release (representing Frequent Flyer Altered 3rd Imp charge). Kilman paid $140 cash that day.

20.     On 6.19.19, Max was impounded a fourth time and returned to Kilman three days later, on 6.22.19. Though she was purportedly charged $385 by AVHS for the impound (representing Frequent Flyer Altered 4th Imp ($280), deworm ($16), deflea ($10), rabies ($15), and board ($64 for four days) charges), the receipt reflects that she paid $120 at release ($30 cash and $90 by card) and was forced to sign a promissory note that she would pay $250 by 7.2.19. She was also compelled to execute the foregoing *AVHS Return to Owner/Claim Form,* a true copy of which is attached as **KILMAN 6-7.**

21.     Kilman did not pay the $250 by 7.2.19, nor did she have a legal obligation to do so given its illegality.

22.     On 7.3.19, AVHS Executive Director Phil Morgan wrote Lorrie Kilman, Kilman's

CLASS ACTION COMPLAINT - 4

mother, that he would never release Max to Kilman again "no matter the circumstances… no matter how sad the kids are… no matter how many letter you write…." A true copy of this email thread, including Morgan's email to Lorrie Kilman on 10.28.19 complaining about the $250 not being paid, is attached as **KILMAN 8-10.**

23.     On 11.7.19, Max was impounded a fifth time and adopted out to a third party on 11.10.19 without any lawful basis when Kilman could not pay the $852 charged by AVHS (representing Frequent Flyer Altered 5th Imp ($560), board ($16), vaccine and deworm ($16), deflea ($10), and "balance correction" of $250).

24.     By email of 11.9.19 to Sherri Leiva, Kilman's aunt, Morgan responded to Leiva's assertion that Kilman's kids were "going crazy crying over their dog" and contesting the fees charged by AVHS as being "astronomical," by stating that if Kilman did not claim Max and pay $852 to AVHS by 11.10.19, he would become "property of AVHS."

25.     The amounts extorted from Kilman by Defendants were not authorized by law. When Kilman could not pay the demanded sum, Defendants illegally withheld Max, falsely claimed relinquishment, ineffectually asserted ownership, and then purported to "adopt" him to a third party without any right, title, or legal interest.

26.     On or about 11.10.19, AVHS "adopted" Max to a third party without Kilman's consent or legal authorization.

27.     AMC 6.01.120, enacted in 2012, states, in relevant part:

> The animal control authority may refuse to release to its owner any animal that has been impounded more than once in a 12-month period unless the owner demonstrates that they have taken steps to reasonably ensure that the violation will not occur again. The shelter or the animal control authority may impose reasonable conditions that must be satisfied by the owner before release of the animal, including conditions assuring that the animal will be confined. Failure to comply with the conditions of release is a violation.

**CLASS ACTION COMPLAINT** - 5

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (833) 878-6835
adam@animal-lawyer.com

28.     No right of appeal to an impartial arbiter is afforded the animal owner should the animal control authority "refuse to release," nor to prove that "steps to reasonably ensure that the violation will not occur again" have been demonstrated.

29.     No right of appeal to an impartial arbiter is afforded the animal owner to avoid any sequelae from the refusal to release, such as euthanasia or adoption.

30.     No right of appeal to an impartial arbiter is afforded the animal owner to contest any "conditions" imposed by the shelter or animal control authority.

31.     For purposes of AMC 6.01.120, AVHS was not the "animal control authority."

32.     The City's "animal control authority" never imposed upon Kilman conditions of release of Max from impound as contemplated by AMC 6.01.120.

33.     Nor did AVHS impose conditions of release on Max.

34.     Nor, on information and belief, did the "animal control authority" refuse to release Max to Kilman or direct AVHS to refuse to release Max to Kilman.

35.     AVHS employee screenshotted posts by Kilman concerning her desperate attempts to recover Max and sent them to Morgan, warning, "Just in case you have a lawsuit happen."

36.     Kilman exhaustively struggled to recover Max by contacting a large number of attorneys and posting rewards for information of Max's whereabout.

37.     Upon hiring Adam P. Karp, who intervened for Kilman and demanded Max's return on threat of litigation by Kilman, on 8.8.20, AVHS coordinated the return of Max to Kilman but did not resolve her monetary claims for damages from being deprived of Max for nine months and incurring attorney's fees to recover him.

38.     Kilman suffered severe emotional distress from the actions taken by Defendants, as well as loss of use of Max, who had an immense intrinsic value to Kilman and her children (but

**CLASS ACTION COMPLAINT** - 6

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 ● Bellingham, WA 98225
(888) 430-0001 ● Facsimile: (833) 878-6835
adam@animal-lawyer.com

no fair market or replacement value), and other noneconomic damages.

39.      As of 12.8.20, AVHS and the City have done nothing to change the challenged fee schedule, as the sums remain as stated in **KILMAN 1** per auburnvalleyhs.org/services-and-fees (accessed 12.8.20).

### III. CLASS ACTION ALLEGATION

40.      Kilman brings this suit as a class action pursuant to CR 23(a), (b)(1), (b)(2) and (b)(3), on behalf of herself and a Plaintiff Class (the "Class") comprised of—(a) all persons whose animals have been impounded within the City at any time since 2013; (b) all persons who have been compelled to sign an *AVHS Return to Owner/Claim Form* at any time since 2013; (c) all persons who have been charged animal impound fees by AVHS or the City since 2013; (d) all persons whose animals have been withheld from them by AVHS or the City because of inability to pay impound fees or because of outright refusal to release regardless of ability to pay and tender, whether or not the animal was an emotional support or service animal, (e) all persons whose animals have been confiscated and adopted out or euthanized by AVHS or the City because of inability to pay impound fees or because of outright refusal to release regardless of ability to pay and tender, whether or not the animal was an emotional support or service animal. Kilman reserves the right to modify this class definition prior to moving for class certification.

41.      This action has been brought and may be properly maintained as a class action pursuant to CR 23 for the following reasons:

a.      The Class is ascertainable, and there is a well-defined community of interest among the members of the Class;

b.      Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but is

**CLASS ACTION COMPLAINT** - 7

Animal Law Offices of
**Adam P. Karp, Esq.**
114 W. Magnolia St., Ste. 400-104 ● Bellingham, WA 98225
(888) 430-0001 ● Facsimile: (833) 878-6835
adam@animal-lawyer.com

estimated to be large given the size of the City's population and the duration of the challenged action (back to 2013).

c.      Kilman's claims are typical of those of other Class members, all of whom have suffered harm due to Defendants' uniform course of conduct.

d.      Defendant is a member of the Class.

e.      The Party opposing the Class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief and corresponding declaratory relief is appropriate respecting the class as a whole, pursuant to CR 23(b)(2).

f.      There are numerous and substantial questions of law and fact common to all of the members of the Class that control this litigation and predominate over any individual issues pursuant to CR 23(b)(3). The common issues include, but are not limited to, the following:

1.   Does the City and AVHS's impound fee schedule (**KILMAN 1**) violate the state and federal constitutions in the respects articulated herein?

2.   Does the City and AVHS's *Return to Owner/Claim Form* (**KILMAN 2**) violate the state and federal constitutions, contain provisions unauthorized by law and substantively and procedurally unconscionable, in the respects articulated herein?

3.   Were Kilman and other Class members damaged?

g.      These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

h.      Kilman will fairly and adequately protect the interests of the Class in that she has no interests antagonistic to other members of the Class and has retained counsel competent in the prosecution of class actions of this injunctive and declaratory nature so as to represent them and the Class;

**CLASS ACTION COMPLAINT** - 8

i.     Without a class action, the Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of its unlawful misconduct;

j.     Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if any, Class members could afford to seek legal redress individually for the wrongs Defendants have committed against them;

k.     This action will foster an orderly and expeditious administration of Class claims, economies of time, effort and expense, and uniformity of decision;

l.     Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Class claims, as are accepted methodologies for class-wide proof of declaratory and injunctive harm; alternatively, upon adjudication of Defendants' common liability, the Court can efficiently determine the claims of the individual Class members;

m.     This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by Defendants.

n.     In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

o.     The Claims in this case are also properly certifiable under applicable law.

## IV. CLAIMS FOR RELIEF AGAINST DEFENDANTS

42.     All allegations above are incorporated by reference and reasserted as to claims below, establishing direct liability as to both Defendants.

**CLASS ACTION COMPLAINT** - 9

43.     Further, the acts of AVHS are imputed to City based on vicarious liability principles of agency and/or concerted action.

44.     **FIRST CLAIM** – **Retrospective and Prospective Injunctive Relief for Ongoing Violation of Federally-Protected Constitutional and Statutory Rights (42 U.S.C. § 1983, 42 U.S.C. § 12101 et seq., 42 U.S.C. § 3601 et seq., Ch. 7.40 RCW)**

A.  To void all impound fees under the challenged City/AVHS fee schedule;

B.  To void all AVHS *Return to Owner/Claim Forms*;

C.  To void all confiscations of animals based on inability to pay the challenged fees and compel their return to owner at no cost;

D.  To force Defendants to disgorge all fees received for impound under the challenged fee schedule, and any liquidated damages or fees demanded under the *Return to Owner/Claim Form*;

E.  To deem such fee schedule, demands for payment per that fee schedule, and return to owner/claim forms as unconstitutional under the State and Federal Constitutions, including but not limited to the Fourth, Fifth, and Fourteenth Amendments;

F.  To deem the liquidated damage and fee shifting provisions of the return to owner/claim form substantively and procedurally unconscionable and *ultra vires;*

G.  To enjoin enforcement of AMC 6.01.120 as violating procedural and substantive due process, constituting an unreasonable seizure, and constituting an illegal takings;

H.  This claim applies specifically to Max and Kilman, as well as the Class.

45.     **SECOND CLAIM** – **Final Retrospective and Prospective Declaratory Judgment for Ongoing Violation of Federally-Protected Constitutional and Statutory Rights (42 U.S.C. § 1983, Ch. 7.24 RCW)**

**CLASS ACTION COMPLAINT -**  10

ANIMAL LAW OFFICES OF
**ADAM P. KARP, ESQ.**
114 W. Magnolia St., Ste. 400-104 ● Bellingham, WA 98225
(888) 430-0001 ● Facsimile: (833) 878-6835
adam@animal-lawyer.com

A.  To declare all impound fees under the challenged City/AVHS fee schedule void *ab initio,* unconstitutional, and *ultra vires*;

B.  To declare all AVHS Return to Owner/Claim Forms void *ab initio* and unconstitutional;

C.  To declare all AVHS Return to Owner/Claim Forms procedurally and substantively unconscionable and *ultra vires;*

D.  To declare all confiscations of animals based on inability to pay the challenged fees void *ab initio,* and to declare that all right, title, and interest in said animals remains in their owners;

E.  To force Defendants to disgorge all fees received for impound under the challenged fee schedule, and any liquidated damages or fees demanded under the Return to Owner/Claim Form;

F.  To declare AMC 6.01.120 unconstitutional as violating procedural and substantive due process, constituting an unreasonable seizure, and constituting an illegal takings.

G.  This claim applies specifically to Max and Kilman, as well as the Class.

46.     **THIRD CLAIM** – **Trespass to Chattels and Conversion of Max (and other animals per the foregoing challenged fee schedule and claim form)**

47.     **FOURTH CLAIM** – **Conversion of Monies from Kilman and Class (per the foregoing challenged fee schedule and claim form)**

48.     **FIFTH CLAIM** – **Outrage (for the intentional and/or reckless infliction of emotional distress upon Kilman by Defendants in withholding and then giving Max to a third party without any lawful authority)**

**PRAYER**

CLASS ACTION COMPLAINT - 11

WHEREFORE, Kilman and Class pray for judgment against Defendants, joint and several, as follows:

A.  Certification of the action as a class action pursuant to CR 23(b)(1), (2), and/or (3), and appointment of Kilman as Class Representative and his counsel of record as Class Counsel;

B.  For economic damages;

C.  For noneconomic damages;

D.  For declaratory and injunctive relief as stated;

E.  For costs of suit;

F.  For reasonable attorney's fees and other litigation-related costs as allowed by law under 42 U.S.C. § 1988, or as otherwise provided by law or equity, or in the alternative, statutory attorney's fees; and

G.  For such other and further relief as the Court may deem just and proper.

Dated this 12.9.20.

ANIMAL LAW OFFICES

/s/ Adam P. Karp

Adam P. Karp, WSB 28622
*Attorney for Plaintiffs Kilman and Class Members*
114 W. Magnolia St., Ste. 400-104
Bellingham, WA  98225
(888) 430-0001
adam@animal-lawyer.com

**CLASS ACTION COMPLAINT** -  12

KILMAN 000001

# AVHS Service Fee Chart

## Altered Animal

| IMPOUNDS (within 24mo period) | ALTERED ANIMAL | ADDITIONAL FEES |
|---|---|---|
| 1st Impound | $35 | + $30 lic + $15 rab +$16 additional vac/deworming +$10 flea treatment + $16 daily board |
| 2nd Impound | $70 + Microchip | + $10 Flea treatment + $16 daily board |
| 3rd Impound | $140 | + $10 Flea treatment + $16 daily board |
| 4th Impound | $280 | + $10 Flea treatment + $16 daily board |
| 5th Impound | $560 | + $10 Flea treatment + $16 daily board |
| 6th & Subsequent Impounds | $1,120 | + $10 Flea treatment + $16 daily board |

## Unaltered Animal

| IMPOUNDS (within 24mo period) | UNALTERED ANIMAL | ADDITIONAL FEES |
|---|---|---|
| 1st Impound | $65 | + $60 lic + $15 rab +$16 additional vac/deworming +$10 flea treatment + $16 daily board |
| 2nd Impound | $130 + Microchip | + $10 Flea treatment + $16 daily board |
| 3rd Impound | $260 + S/N Surgery | + $10 Flea treatment + $16 daily board |
| 4th Impound | $520 + S/N Surgery | + $10 Flea treatment + $16 daily board |
| 5th Impound | $1,040 + S/N Surgery | + $10 Flea treatment + $16 daily board |
| 6th & Subsequent Impounds | $2,080 + S/N Surgery | + $10 Flea treatment + $16 daily board |

## AVHS Mandated Service Fees

| MANDATED SERVICE | CURRENT SPOT FEE | PROPOSED MANDATED FEE |
|---|---|---|
| Microchip | $25 | $45 |
| Cat Neuter | $35 | $75 |
| Cat Spay | $55 | $95 |
| Dog Neuter <50lbs | $75 | $115 |
| Dog Neuter 51-75lbs | $85 | $125 |
| Dog Neuter 76-100lbs | $95 | $125 |
| Dog Neuter >100lbs | $115 | $125 |
| Dog Spay <50lbs | $85 | $125 |
| Dog Spay 51-75lbs | $95 | $135 |
| Dog Spay 76-100lbs | $115 | $145 |
| Dog Spay >100lbs | $130 | $145 |
| Feline Pregnant/Obese | $0 | $30 |
| Canine Pregnant/Obese | $0 | $40 |
| Cryptorchid Neuter | $0 | $40 |
| Injectable Pain Medication | $0 | $20 |
| Take-Home Pain Medication | $0 | $20 |
| Elizabeth Collar | $6.50 | $15 |

KILMAN 000002

# AVHS Return to Owner/Claim Form

**Proof of Ownership**

Owner must provide one of the following, which must show both animal's and owner's name:

- Animal's License Paperwork
- Rabies Certificate
- Other Veterinarian Paperwork
- Adoption/Purchase Paperwork
- Any other Paperwork showing both the animal's and owner's name

The above described animal from Auburn Valley Humane Society. I understand that it is my responsibility under the law to provide humane care and treatment (food, water, shelter, and medical treatment) for this animal; to license, vaccinate and spay/neuter the animal in accordance with all applicable laws of my community.

I understand that Chapter 6.01.100 Mandatory microchip/spay/neuter for impounded dogs and cats states that:

A. No un-microchipped impounded dog or cat that has previously been impounded within the preceding 24-month period may be redeemed by any person until the animal is microchipped pursuant to an order of the animal control officer directing the microchipping. The microchipping shall be accomplished by the shelter or by any duly licensed veterinarian. In all cases, the veterinarian fees and costs shall be paid at the time of redemption by the animal's owner or person redeeming the animal.

B. No unaltered impounded dog or cat that has previously been impounded twice within the preceding 24-month period may be redeemed by any person until the animal is spayed or neutered pursuant to an order of the animal control officer directing the alteration. The alteration shall be accomplished by the shelter or by any duly licensed veterinarian. In all cases, the veterinarian fees and costs shall be paid at the time of redemption by the animal's owner or person redeeming the animal.

C. Exceptions to Mandatory Microchipping or Alteration. The alteration shall not be required upon a showing of proof of alteration from a licensed veterinarian. The microchipping or alteration shall not be required if the owner or other person redeeming the animal provides a written statement from a licensed veterinarian stating that and explaining why the microchip, spay or neuter procedure would be harmful to the animal.

D. Appeal of Order for Microchipping or Alteration. If the owner of the animal objects to the order directing microchipping or alteration of the animal, the owner may submit a written appeal of the order within 72 hours of notice of the impound, which appeal shall be heard by the police chief or designee. The owner shall, at the same time, pay $100.00 as a nonrefundable appeal fee, and shall post a cash deposit of $250.00 to cover the additional costs incurred by the city and/or the animal shelter related to the impound, including but not limited to impound charges and costs of microchipping and alteration. It is further provided that, regardless of the outcome of the appeal, the owner shall be responsible for the costs of or related to the impound and any resulting microchipping and/or alteration. The decision of the police chief or designee on the appeal shall be final, unless the owner seeks injunctive relief from the King County superior court. (Ord. 6529 § 3, 2014; Ord. 6424 § 1, 2012.)

I understand that Chapter 6.01 – ANIMAL CONTROL – GENERAL PROVISIONS of the Auburn City Code § 6.01.120 Conditions of release states that:

KILMAN 000003

The animal control authority may refuse to release to its owner any animal that has been impounded more than once in a 12-month period unless the owner demonstrates that he or she has taken steps to reasonably ensure that the violation will not occur again. The shelter or the animal control authority may impose reasonable conditions that must be satisfied by the owner before release of the animal, including conditions assuring that the animal will be confined. Failure to comply with the conditions of release is a violation.

Any animal suffering from serious injury or disease may be humanely euthanized by the shelter or city; provided, that the shelter or city shall immediately notify the owner if the owner is known. The shelter and city have no obligation to determine the owner of such animal if the animal is not wearing a license or other identification or is not microchipped. (Ord. 6424 § 1, 2012.)

I understand that should it be proven that I am not the legal owner of the animal, I can be prosecuted under the law for theft and agree to hold the Auburn Valley Humane Society harmless in the event of such an occurrence. I understand that providing false statements or information on this Redemption Agreement will constitute a breach of this agreement.

I agree to pay Auburn Valley Humane Society the sum of $500.00 as liquidated damages in the event that the terms of this agreement are breached. This liquidated damage value being agreed to be for the purpose of establishing costs incurred by Auburn Valley Humane Society and does not bar Auburn Valley Humane Society from seeking return of the animal by a judicial process or other legal means.

I agree to pay reasonable attorney fees and court costs in the event this matter if forwarded to an attorney for enforcement. I have read and understand the information above and have filled out the information to the best of my knowledge. I also understand this agreement has not been completed until this document has been signed by me and an AVHS representative and any applicable fees have been paid.

I certify that I have read and understand the terms of this Animal Return to Owner/Claim Form. I hereby accept full responsibility for the life and well-being of this animal. By signing this agreement electronically, I agree that I have read the laminated copy provided to me and I understand, acknowledge, and accept all of the above terms.

*Vision: To be a model of excellence in the advancement of animal welfare.*
*Mission: The Auburn Valley Humane Society enriches the lives of companion animals and people through animal sheltering, services and community engagement.*



KILMAN 000004

## Return to Owner/Guardian Contract - Mar 04, 2019



Changing Lives ... Four Paws at a Time!

**Tel.:** 253-249-7849

**Auburn Valley Humane Society Shelter**
4910 A Street South East
AUBURN, Washington 98092 USA
pmorgan@auburnvalleyhs.org

**Jessica Kilman**
1326 3rd Street South East Apt A
AUBURN, Washington 98002 USA

**Person ID: P28132607**
Tel: 253-217-2129

### Animal Information

| Animal ID: | A40988802 | Name: | Max | Types: | Dog | Gender: | Male |
|---|---|---|---|---|---|---|---|
| ARN: | 190300 | DOB: | 3/4/2014 | Breeds: | Shih Tzu | Altered: | Yes |
| Chip #: | | Current Age: | 5y 0d | Colors: | White/Brown | Size: | Small |
| Type: | | Age Group: | Dog - 6 months to 6 years | Pattern: | | Weight: | 13.00 pound |

# AVHS Return to Owner/Claim Form

## Proof of Ownership

Owner must provide one of the following, which must show both animal's and owner's name:

- Animal's License Paperwork
- Rabies Certificate
- Other Veterinarian Paperwork
- Adoption/Purchase Paperwork
- Any other Paperwork showing both the animal's and owner's name

The above described animal from Auburn Valley Humane Society. I understand that it is my responsibility under the law to provide humane care and treatment (food, water, shelter, and medical treatment) for this animal; to license, vaccinate and spay/neuter the animal in accordance with all applicable laws of my community.

I understand that Chapter 6.01.100 Mandatory microchip/spay/neuter for impounded dogs and cats states that:

A. No un-microchipped impounded dog or cat that has previously been impounded within the preceding 24-month period may be redeemed by any person until the animal is microchipped pursuant to an order of the animal control officer directing the microchipping. The microchipping shall be accomplished by the shelter or by any duly licensed veterinarian. In all cases, the veterinarian fees and costs shall be paid at the time of redemption by the animal's owner or person redeeming the animal.

B. No unaltered impounded dog or cat that has previously been impounded twice within the preceding 24-month period may be redeemed by any person until the animal is spayed or neutered pursuant to an order of the animal control officer directing the alteration. The alteration shall be accomplished by the shelter or by any duly licensed veterinarian. In all cases, the veterinarian fees and costs shall be paid at the time of redemption by the animal's owner or person redeeming the animal.

C. Exceptions to Mandatory Microchipping or Alteration. The alteration shall not be required upon a showing of proof of alteration from a licensed veterinarian. The microchipping or alteration shall not be required if the owner or other person redeeming the animal provides a written statement from a licensed veterinarian stating that and explaining why the microchip, spay or neuter procedure would be harmful to the animal.

D. Appeal of Order for Microchipping or Alteration. If the owner of the animal objects to the order directing microchipping or alteration of the animal, the owner may submit a written appeal of the order within 72 hours of notice of the impound, which appeal shall be heard by the police chief or designee. The owner shall, at the same time, pay $100.00 as a nonrefundable appeal fee, and shall post a cash deposit of $250.00 to cover the additional costs incurred by the city and/or the animal shelter related to the impound, including but not limited to impound charges and costs of microchipping and alteration. It is further provided that, regardless of the outcome of the appeal, the owner shall be responsible for the

KILMAN 000005

costs of or related to the impound and any resulting microchipping and/or alteration. The decision of the police chief or designee on the appeal shall be final, unless the owner seeks injunctive relief from the King County superior court. (Ord. 6529 § 3, 2014; Ord. 6424 § 1, 2012.)

I understand that Chapter 6.01 – ANIMAL CONTROL – GENERAL PROVISIONS of the Auburn City Code § 6.01.120 Conditions of release states that:

The animal control authority may refuse to release to its owner any animal that has been impounded more than once in a 12-month period unless the owner demonstrates that he or she has taken steps to reasonably ensure that the violation will not occur again. The shelter or the animal control authority may impose reasonable conditions that must be satisfied by the owner before release of the animal, including conditions assuring that the animal will be confined. Failure to comply with the conditions of release is a violation.

Any animal suffering from serious injury or disease may be humanely euthanized by the shelter or city; provided, that the shelter or city shall immediately notify the owner if the owner is known. The shelter and city have no obligation to determine the owner of such animal if the animal is not wearing a license or other identification or is not microchipped. (Ord. 6424 § 1, 2012.)

I understand that should it be proven that I am not the legal owner of the animal, I can be prosecuted under the law for theft and agree to hold the Auburn Valley Humane Society harmless in the event of such an occurrence. I understand that providing false statements or information on this Redemption Agreement will constitute a breach of this agreement.

I agree to pay Auburn Valley Humane Society the sum of $500.00 as liquidated damages in the event that the terms of this agreement are breached. This liquidated damage value being agreed to be for the purpose of establishing costs incurred by Auburn Valley Humane Society and does not bar Auburn Valley Humane Society from seeking return of the animal by a judicial process or other legal means.

I agree to pay reasonable attorney fees and court costs in the event this matter if forwarded to an attorney for enforcement. I have read and understand the information above and have filled out the information to the best of my knowledge. I also understand this agreement has not been completed until this document has been signed by me and an AVHS representative and any applicable fees have been paid.

I certify that I have read and understand the terms of this Animal Return to Owner/Claim Form. I hereby accept full responsibility for the life and well-being of this animal. By signing this agreement electronically, I agree that I have read the laminated copy provided to me and I understand, acknowledge, and accept all of the above terms.

Person Signature:

KILMAN 000006

## Return to Owner/Guardian Contract - Jun 22, 2019

**Tel.:** 253-249-7849



Auburn Valley
**Humane Society**
*Changing Lives ... Four Paws at a Time!*

**Auburn Valley Humane Society Shelter**
4910 A Street South East
AUBURN, Washington 98092 USA
pmorgan@auburnvalleyhs.org

**Jessica & Mary Kilman - Egle**
1326 3rd Street South East Apt A
AUBURN, Washington 98002 USA

**Person ID: P28132607**
Tel: 253-217-2129

### Animal Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Animal ID:** A35752959 | | **Name:** | Max | **Types:** | Dog | **Gender:** | Male |
| **ARN:** | 170713 | **DOB:** | 3/4/2014 | **Breeds:** | Shih Tzu/Mix | **Altered:** | Yes |
| **Chip #:** | 982126052618081 | **Current Age:** 5y 3m 18d | | **Colors:** | Beige/Brown | **Size:** | Medium |
| **Type:** | 24PetWatch | **Age Group:** | Dog - 6 months to 6 years | **Pattern:** | | **Weight:** | 13.50 pound |

# AVHS Return to Owner/Claim Form

## Proof of Ownership

Owner must provide one of the following, which must show both animal's and owner's name:

· Animal's License Paperwork

· Rabies Certificate

· Other Veterinarian Paperwork

· Adoption/Purchase Paperwork

· Any other Paperwork showing both the animal's and owner's name

The above described animal from Auburn Valley Humane Society. I understand that it is my responsibility under the law to provide humane care and treatment (food, water, shelter, and medical treatment) for this animal; to license, vaccinate and spay/neuter the animal in accordance with all applicable laws of my community.

I understand that Chapter 6.01.100 Mandatory microchip/spay/neuter for impounded dogs and cats states that:

A. No un-microchipped impounded dog or cat that has previously been impounded within the preceding 24-month period may be redeemed by any person until the animal is microchipped pursuant to an order of the animal control officer directing the microchipping. The microchipping shall be accomplished by the shelter or by any duly licensed veterinarian. In all cases, the veterinarian fees and costs shall be paid at the time of redemption by the animal's owner or person redeeming the animal.

B. No unaltered impounded dog or cat that has previously been impounded twice within the preceding 24-month period may be redeemed by any person until the animal is spayed or neutered pursuant to an order of the animal control officer directing the alteration. The alteration shall be accomplished by the shelter or by any duly licensed veterinarian. In all cases, the veterinarian fees and costs shall be paid at the time of redemption by the animal's owner or person redeeming the animal.

C. Exceptions to Mandatory Microchipping or Alteration. The alteration shall not be required upon a showing of proof of alteration from a licensed veterinarian. The microchipping or alteration shall not be required if the owner or other person redeeming the animal provides a written statement from a licensed veterinarian stating that and explaining why the microchip, spay or neuter procedure would be harmful to the animal.

D. Appeal of Order for Microchipping or Alteration. If the owner of the animal objects to the order directing microchipping or alteration of the animal, the owner may submit a written appeal of the order within 72 hours of notice of the impound, which appeal shall be heard by the police chief or designee. The owner shall, at the same time, pay $100.00 as a nonrefundable appeal fee, and shall post a cash deposit of $250.00 to cover the additional costs incurred by the city and/or the animal shelter related to the impound, including but not limited to impound charges and costs of microchipping and alteration. It is further provided that, regardless of the outcome of the appeal, the owner shall be responsible for the

KILMAN 000007

costs of or related to the impound and any resulting microchipping and/or alteration. The decision of the police chief or designee on the appeal shall be final, unless the owner seeks injunctive relief from the King County superior court. (Ord. 6529 § 3, 2014; Ord. 6424 § 1, 2012.)

I understand that Chapter 6.01 – ANIMAL CONTROL - GENERAL PROVISIONS of the Auburn City Code § 6.01.120 Conditions of release states that:

The animal control authority may refuse to release to its owner any animal that has been impounded more than once in a 12-month period unless the owner demonstrates that he or she has taken steps to reasonably ensure that the violation will not occur again. The shelter or the animal control authority may impose reasonable conditions that must be satisfied by the owner before release of the animal, including conditions assuring that the animal will be confined. Failure to comply with the conditions of release is a violation.

Any animal suffering from serious injury or disease may be humanely euthanized by the shelter or city; provided, that the shelter or city shall immediately notify the owner if the owner is known. The shelter and city have no obligation to determine the owner of such animal if the animal is not wearing a license or other identification or is not microchipped. (Ord. 6424 § 1, 2012.)

I understand that should it be proven that I am not the legal owner of the animal, I can be prosecuted under the law for theft and agree to hold the Auburn Valley Humane Society harmless in the event of such an occurrence. I understand that providing false statements or information on this Redemption Agreement will constitute a breach of this agreement.

I agree to pay Auburn Valley Humane Society the sum of $500.00 as liquidated damages in the event that the terms of this agreement are breached. This liquidated damage value being agreed to be for the purpose of establishing costs incurred by Auburn Valley Humane Society and does not bar Auburn Valley Humane Society from seeking return of the animal by a judicial process or other legal means.

I agree to pay reasonable attorney fees and court costs in the event this matter if forwarded to an attorney for enforcement. I have read and understand the information above and have filled out the information to the best of my knowledge. I also understand this agreement has not been completed until this document has been signed by me and an AVHS representative and any applicable fees have been paid.

I certify that I have read and understand the terms of this Animal Return to Owner/Claim Form. I hereby accept full responsibility for the life and well-being of this animal. By signing this agreement electronically, I agree that I have read the laminated copy provided to me and I understand, acknowledge, and accept all of the above terms.

Person Signature:                                        Organization Signature:

KILMAN 000008

| | |
|---|---|
| **From:** | Phil Morgan |
| **Sent:** | Monday, October 28, 2019 6:16 PM |
| **To:** | Lorrie Kilman |
| **Subject:** | RE: Supervisor |

Hi Lorrie... I was going over our Balance on Account report today and noticed your daughter still has not made ANY effort in paying her *outstanding balance of $250* owed to AVHS on her $280 original balance for the release of her dog back in June 2019. To say the least I am even more disappointed than the last email I sent to you... I am not sure how... but she is blaming me for her not paying her balance...???

Her balance of $250 was due to us on July 2nd... when I called her today, she said she texted me (after my last email to you) wanting to set up an extended payment plan. I did not respond back to her (which she used as an excuse to completely ignore her obligation) because if she knew she couldn't pay her balance before it was due, I thought (silly me) she would have contacted me before her due date...not after... but I still thought after four months (again, silly me for giving her the benefit of doubt), she would make an effort to satisfy her obligation without being contacted by me for what is owed to AVHS.

She did tell me today that she is paid on the 15th and she would be in to pay her balance. I am not holding my breath... and I hope she will keep her word... I am honestly hoping I will not be disappointed again... and any persuasion you may have with her will be sincerely appreciated.

I guess the good news is her doggie has not visited us since then... ☺...

Thanks again for anything you can do to resolve this matter...
Best,
*Phil*

**Phil Morgan**
**President/CEO**

e: pmorgan@auburnvalleyhs.org  |  p: 253.249.7849 | c: 727.729.2159 |  f: 253.929.8612

**Auburn Valley Humane Society**  |  4910 A Street SE  |  Auburn, WA 98092  |  www.auburnvalleyhs.org
Shelter Hours | 11am to 6pm - 7 days a week

"You can easily judge the character of a man by how he treats those who can do nothing for him."
~Johann Wolfgang von Goethe (1749-1832)

**From:** Phil Morgan
**Sent:** Wednesday, July 3, 2019 8:31 AM
**To:** Lorrie Kilman <lorriekilman@gmail.com>
**Subject:** RE: Supervisor

Hi Lorrie... I am very disappointed that your daughter did not come in to pay on her balance  yesterday as she PROMICED when she picked up her dog...all we needed was a phone call or an email telling us why she could not make it in...and we could have made accommodations...but once again, we have gone out on a limb for you and your daughter and once again the branch has broken... with us landing on our face...and you wonder why she was "treated" the way she was in the email below... you wonder why her credibility is minimized... and we do not trust her... or believe a word that comes

1

KH MAN 000009

out of her mouth…for the life of me, I cannot understand why you and your daughter can not honor your commitments… Please know that if she does not come in and pay her balance by today and honor her commitment to us, the next time her dog comes into our shelter… she will not get her dog back… no matter the circumstances… no matter how sad the kids are… no matter how many letters you write…

Thank you for your attention to this Matter…

*Phil*

**Phil Morgan**
**President/CEO**

e: pmorgan@auburnvalleyhs.org | p: 253.249.7849 | c: 727.729.2159 | f: 253.929.8612

**Auburn Valley Humane Society** | 4910 A Street SE | Auburn, WA 98092 | www.auburnvalleyhs.org
Shelter Hours | Sunday 12p-4p | Monday - Friday 10a-6p | Saturday 12p-6p

> "You can easily judge the character of a man by how he treats those who can do nothing for him."
> ~Johann Wolfgang von Goethe (1749-1832)

**From:** Lorrie Kilman <lorriekilman@gmail.com>
**Sent:** Saturday, June 22, 2019 8:50 AM
**To:** Phil Morgan <pmorgan@auburnvalleyhs.org>
**Subject:** Supervisor

I am writing to complain about your employees treatment of my daughter and granddaughters.

She was younger, than me, but most people are; with long dark hair. I believe she said she was a manager.

My daughter's dog has gotten out of their fenced yard several times and conveniently Animal control was in the neighborhood and picked him up. Both times right in front of her building. He is micro chipped and had a king county license. Not only has she purchased a king county license but also an AUBURN license. The dog will be getting his 3rd set of immunization in the past 6 months. I'm beginning to question their integrity.

The animal control guy was counselling her on eliminating risk and how to keep it at a minimum. He said "I'd rather you spend the money fixing the problem then having punitive damages

They saw the license a but didn't once try to return him while right in front of her house. My daughter's dog had his shots, he's neutered and is at a healthy weight. He is not at all neglected. I have to watch him if they aren't going to be home. My daughter is renting an apt in which the landlord has built a brand new fence.

My daughter has 4 kids. Ages 3, 9, 16 and almost 18, heaven forbid she can't keep her eye on the dog 24/7. Your manager is "trying to be a responsible pet owner" So her fines are 360 to get my grandchildrens beloved pet back. My daughter gets $400 a month. She can't afford to spend her entire income on dog bail. Your manager indicated that my daughter was irresponsible.if that dog had been skinny, dirty, or he was matted and not groomed, I could Dee th a trowedI could see it So she is paying more each time he is there. I think that's wrong. You don't get your traffic fine increased every time you get a ticket It's extortion. A minimal cost of living type increase but not doubled in every instance. She also said that they had given my daughter a discount last time and they WERE NOT DOING IT AGAIN. "NOT DOING IT," NOT THAT THEY COULDNT DO IT.

The animal control gentleman said he'd rather

KILMAN 000010

I can tell you that dog bolts and he's fast. There have been times when he has taken off at my house.

Responsible pet ownership is a beautiful thing but my daughter's first responsibility is her children. Her youngest is busy and into everything. The oldest one is coming and going with her friends. The teenagers..do what they want. How dare your employee not put the well-being of the pet and my granddaughters broken hearts ahead of her need to punish my daughter. She's feeling her power , it was obvious. She was rude and dismissive to my daughter, in the name of the Humane Society. "Humane only applies to 4 legged mammals miss manager?"

With a little experience in life you will realize that life isn't black and white. There is a world of gray. It is our compassion and empathy that make us humane. As a Urepresentative of the "Humane society" she should try to be Humane to the humans you encounter along the way
"Ego is anesthiologit

My daughter's name is Jessica kilman
1326 3RD street SE #A
AUBURN
DOGS NAME IS MAX
Her # 253 217 2129 thanks. How about a cut

Lorries Kilman